Per Curiam.
 

 The question presented by these appeals is whether this court can now grant to the defendant the relief to which it claims to have been entitled in the trial court. Simple as this question appears to be in theory, it is quite perplexing in fact, for the record upon which it is submitted is replete with confusing and irreconcilable inconsistencies.
 

 On the 23d day of December, 1904, the plaintiffs in these two actions signed an instrument purporting to be an absolute transfer to the defendant of all the capital stock in a corporation in which the respective plaintiffs were the sole stockholders. Prior to the execution of this instrument, the Eastons had been engaged as partners in the business of lumbering on a large tract of timber land in the province of Quebec, Canada, of which they were the owners. The firm was indebted to the defendant for large advances of money, and more was needed. The plaintiff Alice E. Pray, a sister of the Eastons, was an unsecured creditor of the firm to the extent of $32,000. For the purpose of securing to the defendant the payment of the moneys which it had loaned to the Eastons, and to secure further advances which the defendant was willing to make, it was arranged that the Easton partnership should be converted into a corporation, all of the capital stock of which should be issued to the Eastons, except 320
 
 *320
 
 shares of the par value of $100 per share which were to be issued to Mrs. Pray, and then it was all to be transferred to the defendant.- This transfer was consummated by the instrument of December 23d, 1904, which recited “That the transfer of the stock of the said 0. P. Easton & Co. * - * * is hereby confirmed and declared to be absolute and without limitation or equity of redemption and to • vest the entire and unqualified title thereto in the said The New York State National Bank.”
 

 The plaintiff Pray asked for a rescission of this instrument as to her on the ground that she had signed it under a mistake as to its purpose and import. The plaintiffs Easton declared that the instrument, in so far as it purported to be an absolute transfer of the stock of their corporation, was the result of a mutual mistake, and asked that it be reformed so as to express the intention that it should be operative only as security for their debt to the defendant. The answers of the defendant denied these material allegations of the complaints,' and set forth at length the various evidences of debt which it held against the Eastons, and demanded judgment for the dismissal -of the complaints. In addition to these prayers for relief the defendant’s answer ■ in the
 
 Pray
 
 case asked that if it" be adjudged that the plaintiff signed the contract of December 23d, 1904, through a mistake on her part, that then it be adjudged that the plaintiff did intend to transfer said-shares of stock to the defendant as security for the repayment to the 'defendant of any indebtedness due to it from the firm of 0. P. Easton Oo. In the
 
 Easton
 
 case the prayer for relief was in substantially the same form, with a few verbal differences adapted to the slight variations between the two complaints. In both answers the defendant concluded its" prayers for relief by asking that an account be taken, that it have judgment for the amount found to be due, and that the stock of the Easton corporation be sold and the proceeds applied in satisfaction of the judgment.
 

 
 *321
 
 The two cases were tried upon the same evidence, although separate judgments were entered. The judgment in the
 
 Pray
 
 case followed the prayer for relief in the complaint and granted rescission of the contract as to that plaintiff. In the
 
 Easton
 
 case the contract was decreed to be so reformed that it should stand as security for the debt from the Eastons to the defendant. The trial court ignored the defendants’ demands for affirmative relief and, instead of making the usual findings of fact and conclusions of law, it made in each case what is styled an “order for judgment ” which contains substantially all the findings and conclusions necessary to sup'port the judgments. Aside from the prayers for relief in the defendant’s answers, the records disclose no other demand or request for affirmative judgments in favor of the defendant, except the requests that the court find as conclusions of law that the defendant was entitled to judgment for such an amount as should be found to be due, and that the stock be sold to satisfy the judgment. These requests were refused.
 

 ■ The cases went to the Appellate Division on defendant’s appeal, and there the judgment in the
 
 Easton
 
 case was unanimously affirmed, and the judgment in the
 
 Pray
 
 case was modified by striking out the provision for rescission and inserting in lieu thereof a direction to the effect that the instrument of December 23d, 1904, was not an absolute and unconditional transfer of the stock of the .Easton corporation, but was valid to constitute a lien intended to secure the debt due from the Eastons to the defendant. From these judgments the defendant has appealed to this court.
 

 Upon the argument of this appeal the defendant’s counsel complains of the treatment which his client received in the courts below, and he insists that this court should now render the judgments which the trial court should have made. This court may, it is true, affirm, reverse or modify a judgment brought here for review,
 
 *322
 
 “ or grant to either party such judgment as such party may be entitled to ” (Code Civ. Pro. sec. 1337), but this means, of course, such judgment as a party may be entitled to upon the facts found, since this court can neither review facts nor make findings of fact.
 
 (Farleigh
 
 v.
 
 Cadman,
 
 159 N. Y. 169, 175.) Unfortunately for the defendant, there are no findings in these records which would support a judgment in its favor. We are, therefore, to decide whether the cases shall be sent back to the court of first instance with directions that it make appropriate findings, or whether we shall affirm the judgments and leave the defendant to proceed in another action to foreclose its hen. The first of these alternatives is not practicable for the reason that the cases were not tried upon the theory that the defendant claimed simply a lien under the instrument of December 23d, 190Í. The complaint in the
 
 Pray
 
 case asked for a decree of rescission and that relief was granted. In the
 
 Easton
 
 case the plaintiffs alleged and contended that the instrument should be declared a lien. In both cases the defendant took the position that the transfer was absolute, and its prayer for affirmative relief was purely secondary to its principal demand for a dismissal of the complaints. This is clearly indicated by the attitude of defendant’s counsel during the trial and by the form of the questions submitted to the jury without objection. The record discloses that this position was not always consistently maintained, for at times the defendant’s counsel insisted that the defendant had become the absolute owner of the stock of the Easton corporation, and again he apparently conceded that it was held simply as a pledge. All that can be affirmed with certainty in this regard is that the record is quite confusing, and leaves us in doubt as to what the defendant’s position was.
 

 Another circumstance which helps to incline us to the view that the defendant should be left to foreclose its lien in a separate action is, that there is some evidence indi
 
 *323
 
 eating that the defendant had proceeded upon the theory that it was the absolute owner of the Easton stock, and had conducted lumbering operations on the Easton lands on account of which the plaintiffs may be entitled to some offset against the defendant’s claim. These facts are referred to for the purpose of showing that, upon the present record, no court can grant to the defendant the relief which it now seeks; and if a new record must he made it will he much simpler and easier to make it in a new action than to add still more to the confusion of the one before us. It may he granted that the trial court, once it had acquired jurisdiction, could have summarily disposed of the whole controversy between the parties. Had this course been suggested or urged by either or both counsel we might have a different record to review. As it is, we cannot say that our mere direction for an order of reference to compute would suffice to insure a proper disposition of the issues that may yet remain to he tried, and we have no power to do more. Under the Code of Civil Procedure, as it stood when the judgments herein were rendered, neither this court nor the Appellate Division had the power to make a judgment based upon new facts.
 
 (Matter of Chapman,
 
 162 N. Y. 456, 459.) The only course open to us is to affirm the judgments and thus give the parties a fair opportunity to litigate any issues that may properly arise when the defendant brings an action to enforce its lien.
 

 The judgments and orders from which the defendant has appealed should be affirmed, without costs in this court to either party as against the other.
 

 Willard Bartlett, Oh. J., Werner, Collin, Cuddeback, Hogan and Cardozo, JJ., concur; Hornblower, J., votes for modification.
 

 Judgments and orders affirmed.